**In re ROYAL COMPOSING ROOM, INC., Debtor.**

**No. 86 Civ. 4849 (JFK).**

United States District Court, S.D. New York.

Sept. 29, 1987.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (David Silberman, AFL–CIO, Washington, D.C., of counsel), for appellant New York Typographical Union No. 6.

Michael Hess, Gelberg & Abrams, New York City, for appellee.

## OPINION and ORDER

KEENAN, District Judge:

### Background

New York Typographical Union No. 6 ("Local 6") appeals from an order of the Bankruptcy Court filed by Bankruptcy Judge Prudence B. Abram, 62 B.R. 403. Judge Abram granted the motion of the Debtor, Royal Composing Room, Inc., ("Royal") for approval of its rejection of its collective bargaining agreement with appellant. For the reasons set forth below, the Court affirms Judge Abram's order.

### Facts

This case arises in a changing industry. The appellee is an advertising typography company, and one of the last unionized shops. For most of this century, the advertising typography industry relied extensively on the linotype machine. However, the past decade has seen the industry turn increasingly to the latest computer technology.

It was in this corporate environment that Royal was created in 1975 as a result of the merger of two old unionized typesetting companies. Royal was a party to a collective bargaining agreement with Local 6. Although the company was profitable during its first several years, in 1982 its financial condition worsened. In that year, the annual gross revenues decreased by two million dollars, and it suffered a net loss of $545,236. Over the following three years, Royal lost over $752,900.

When confronted with these difficulties, Royal began to cut expenses. In 1983, Royal sharply cut the compensation of its principal executives, it froze salaries of salesmen and middle management foremen, and it eliminated company automobiles, along with other savings efforts. In 1985, Royal moved its plant to a smaller location to avoid a rent increase. By the end of that year, Royal reduced the number of non-Local 6 employees from 48 to 40.

As of the end of 1985, Local 6 had not yet made any sacrifices or concessions. It became increasingly urgent to obtain some savings from the union when Royal lost its largest customer, Doyle Dane Bernbach Inc., at the start of 1986. Royal was unable to convince the union to forego a 3% wage increase that had already been agreed to, nor would the union alter its arbitration demands.

On March 14, 1986, Royal filed its petition for reorganization under Chapter 11, section 301 of the Bankruptcy Code. Royal

then sought to reject its collective bargaining agreement under section 1113(a). However, pursuant to section 1113(b)(1)(A), before rejecting the agreement, Royal was required to make a proposal to the union, "which provides for those necessary modifications in the employees' benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably." On March 18, a meeting was held between Royal and Local 6 at which the proposal was made. The proposal included a reduction of benefits, changes in work rules, the elimination of the scheduled wage increase, and the elimination of the union's right to arbitration as the way to change the contract. The union rejected the proposal and did not negotiate. Judge Abram noted that, "[t]he small number and short length of the meetings had is attributable to the union.... At no time prior to May 5, 1986 did the union make a counterproposal, comment item by item on the Debtor's proposal or the Debtor's financial situation, or state any reasons why it found the Debtor's request to be unfair or inequitable." *In re Royal Composing Room, Inc.*, 62 B.R. 403, 409 (Bankr.S.D.N.Y. 1986). On May 5, 1986 the Bankruptcy Court held a final pretrial conference and, for the first time, the union made a counterproposal. Judge Abram found the proposal unacceptable. *See id.* at 410. On May 8, the trial commenced and on June 16, Royal's section 1113 motion was granted. This appeal followed.

### DISCUSSION

Focusing on section 1113(c)(1), Local 6 raises two arguments on appeal: (1) the Bankruptcy Court did not apply the proper definition of "necessary" under section 1113, and (2) Royal's proposal did not treat all affected parties fairly and equitably. Both positions are unavailing.

At the outset, it should be noted that a bankruptcy court's interpretation of the statute is a legal conclusion subject to plenary review. *Truck Drivers Local 807 v. Carey Transportation Inc.*, 816 F.2d 82, 88 (2d Cir.1987). If the bankruptcy court's legal interpretations are correct, then its factual determinations can only be disturbed if they are clearly erroneous. *Id.* In this case, Judge Abram's opinion passes muster.

The Second Circuit has indicated that the term "necessary" contained in section 1113(b)(1)(A) does not mean " 'essential' or bare minimum." *See Carey Transportation*, 816 F.2d at 89. In rejecting the Third Circuit's approach which equated necessary with essential, *see Wheeling-Pittsburgh Steel Corp. v. United Steelworkers*, 791 F.2d 1074, 1088 (3d Cir.1986), the Second Circuit ruled that, "the necessity requirement places on the debtor the burden of proving that its proposal is made in good faith, and that it contains necessary, but not absolutely minimal, changes that will enable the debtor to complete the reorganization process successfully." In substance, this is the analysis employed by Judge Abram. Indeed, the Second Circuit in *Carey Transportation* quoted with approval Judge Abram's description of why a broader definition of "necessary" was required. "As the *Royal Composing Room* court phrased it, 'A debtor can live on water alone for a short time but over the long haul it needs food to sustain itself and retain its vigor.' " *Carey Transportation*, 816 F.2d at 89–90 (quoting 62 B.R. at 418).

Applying the standard of necessity later endorsed by the Second Circuit in *Carey Transportation*, Judge Abram found that Royal had, "established that it had in good faith attempted to negotiate for necessary changes but had been unsuccessful because of the Union's unwillingness to engage in serious discussions." 62 B.R. at 618. The record supports this finding. Local 6 was unresponsive and dilatory in the face of management's financial condition and resulting proposal. Likewise, Judge Abram was correct in her analysis of Royal's proposal. She found that Royal had cut non-union management and executive salaries, eliminated trade association memberships and even reused old doorknobs. 62 B.R. at 412. During this time, union labor costs were the only expenses

not cut. *Id.* It cannot be concluded that these findings were clearly erroneous. The correctness of Judge Abram's legal conclusion is bolstered by the Second Circuit's statement in *Carey Transportation* that courts "must consider whether rejection [of a collective bargaining agreement] would increase the likelihood of successful reorganization." *Carey Transportation*, 816 F.2d at 89. This Court cannot envision Royal being able to successfully reorganize absent at least enforcement of its proposal under section 1113(b)(1)(A). Rejection clearly increases the likelihood of successful reorganization.

 Local 6 further asserts that Royal did not satisfy the statutory requirement that under the pre-petition proposal, "all creditors, the debtor and all affected parties are treated fairly and equitably." Judge Abram correctly found that Royal "had spread the burden of financial sacrifice." 62 B.R. at 411. As noted earlier, Royal cut costs in many ways, including a decrease in executive compensation, the rescinding of raises and freezing of salaries of salesmen and middle level management, the elimination of company cars, and the moving of its premises to smaller quarters. The union's wages were neither frozen nor cut. It is clear that the pre-petition proposal merely sought "to spread the burden of financial sacrifice" a little further, so that it reached the union. *Carey Transportation* again underscores the wisdom of Judge Abram's opinion. The Second Circuit observed that a debtor need not show that managers and non-union employees have their benefits cut to the degree union benefits are cut. 816 F.2d at 90. In this case, the union's benefits were the last to be cut, and it certainly was not the only constituency in Royal to feel the financial pinch. Royal's proposal satisfied the statute's requirement of fairness and equity.

## CONCLUSION

The Bankruptcy Court properly found the pre-petition proposal satisfied the requirements section 1113(b)(1)(A), and that the rejection of the collective bargaining agreement was proper. The opinion of Judge Abram is hereby affirmed.

SO ORDERED.